**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Affinity Technology Group, Inc., | ) | Case No. 08-04979-dd |
| | ) | |
| Debtor. | ) | |

## DEBTOR'S APPLICATION TO EMPLOY IP INVESTMENTS GROUP, LLC AS ITS SALES BROKER AND CONSULTANT FOR CERTAIN INTELLECTUAL PROPERTY ASSETS

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

Affinity Technology Group, Inc., ("Debtor"), through its Attorney G. William McCarthy, respectfully represents:

1. On August 19, 2008, the Debtor filed its Voluntary Chapter 11 Petition (the "Petition Date").

2. The Debtor is operating its business and managing its assets as debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor's wholly owned subsidiary, Decisioning.com, Inc., filed its Chapter 11 petition on August 29, 2008.

4. The Debtor wishes to employ the firm of IP Investments Group, LLC ("Firm") as its sales broker and consultant for certain intellectual property assets for the Debtor pursuant to 11 U.S.C. §327.

5. The Debtor has selected Firm because of its experience and expertise in connection with providing intellectual property transaction and licensing services to a myriad of clients, including the owners of technology and financial services-related intellectual property.

1

6. No amounts are currently due to Firm from Debtor. To any extent it is determined that Debtor owes amounts to Firm for pre-petition services, Firm hereby waives any and all such claims relating to services rendered pre-petition.

7. As set forth in the Affidavit of <u>Michael W. McLaughlin</u> (the "Affidavit"), Firm has disclosed the following connections with the Debtor, its creditors and parties in interest in this matter:

A. The Firm has worked with the law firm Womble Carlyle Sandridge & Rice, PLLC on unrelated intellectual property consulting engagements in the past. The Firm does not believe that this connection creates any conflicts.

B. Several members of the Firm have personal bank accounts with some of the banks connected to the Debtor, but the Firm does not believe these relationships create any conflicts.

8. Except as disclosed herein above and in the Affidavit, the Debtor believes Firm has no connection with the creditors or any other party in interest, their respective attorneys and accountants, the U. S. Trustee, or any person employed in the office of the U. S. Trustee.

9. Despite the foregoing connections, the Debtor believes that Firm does not hold or represent an interest adverse to the Debtor or the estate of the Debtor and that Firm is a disinterested person as that term is defined in U.S.C. §101(14).

10. Debtor and Firm have agreed that Firm will receive (a) a commission of twenty percent (20%) of any gross proceeds obtained if the sales price is equal to or less than $1,000,000.00 at the closing of any such sale, (b) an incremental commission of twenty-five percent (25%) of any gross proceeds obtained above $1,000,000.00, (c) Debtor shall also reimburse Firm for ordinary out-of-pocket expenses incurred in connection with the performance of its services pursuant to the Engagement Agreement and Firm agrees to provide the Debtor with detailed monthly expense <u>reports</u>, as compensation for its services. This is less than Firm's normal fee arrangement for clients outside of bankruptcy. The Firms normal fee arrangement for brokering a sale of patent rights is 25% of gross proceeds plus the reimbursement of out-of-pocket expenses.

11. Debtor and Firm realize that the terms of the employment of Firm are subject to the approval of the Court.

WHEREFORE, the Debtor prays that its employment of Firm under the terms specified herein be approved by the Court and that it have such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED on this the 22nd day of October, 2008, at Columbia, South Carolina.

                      Affinity Technology Group, Inc.

                      /s/ G. William McCarthy, Jr
                      By: G. William McCarthy, Jr.
                      Its: Counsel for the Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Affinity Technology Group, Inc., | ) | Case No. 08-04979-dd |
| | ) | |
| Debtor. | ) | |

**AFFIDAVIT OF MICHAEL W. MCLAUGHLIN IN SUPPORT OF DEBTORS' APPLICATION TO RETAIN AND EMPLOY IP INVESTMENTS GROUP, LLC AS SALES BROKER AND CONSULTANT FOR CERTAIN INTELLECTUAL PROPERTY ASSETS**

By the filing of this Affidavit, the undersigned testifies as follows:

1. I am an authorized Principal of IP Investments Group, LLC ("Firm") which maintains its principal place of business at The Forum, Suite 140, 3930 East Jones Bridge Road, Norcross, GA 30092.

2. Because of Firm's experience in providing intellectual property transaction and licensing services to a myriad of clients, including the owners of technology and financial services-related intellectual property, Debtor has requested that Firm act as its sales broker and consultant for certain intellectual property assets.

3. No amounts are currently due to Firm from Debtor. To any extent it is determined that Debtor owes amounts to Firm for pre-petition services, Firm hereby waives any and all such claims relating to services rendered pre-petition.

4. Except as disclosed hereinbelow, Firm has no other connection with the creditors or any other party in interest, their respective attorneys and accountants, the U. S. Trustee, or any person employed in the office of the U. S. Trustee.

Firm discloses the following connections with the Debtor, its creditors and parties in interest in this matter:

A. The Firm has worked with the law firm Womble Carlyle Sandridge & Rice, PLLC on unrelated intellectual property consulting engagements in the past. The Firm does not believe that this connection creates any conflicts.

B. Several members of the Firm have personal bank accounts with some of the banks connected to the Debtor, but the Firm does not believe these relationships create any conflicts.

5. I believe that Firm does not hold or represent an interest adverse to the Debtor or the estate of the Debtor and that Firm is a disinterested person as that term is defined in U.S.C. §101(14).

6. Debtor has agreed to pay the fees of Firm. Fees for Firm are (a) a commission of twenty percent (20%) of any gross proceeds obtained if the sales price is equal to or less than $1,000,000.00 at the closing of any such sale, (b) an incremental commission of twenty-five percent (25%) of any gross proceeds obtained above $1,000,000.00, (c) Debtor shall also reimburse Firm for ordinary out-of-pocket expenses incurred in connection with the performance of its services pursuant to the Engagement Agreement and Firm agrees to provide the Debtor with detailed monthly expense reports. This fee structure is less than the Firms standard fee for clients outside of bankruptcy. The Firms normal fee arrangement for brokering a sale of patent rights is 25% of gross proceeds plus the reimbursement of out-of-pocket expenses.

7. Firm realizes that the terms of the employment of Firm are subject to the approval of the Court.

8. If any of the information provided in this Affidavit changes during the pendency of this case, Affiant will promptly inform the Court of such changes.

By: /s/ Michael W. McLaughlin
Its: Principal

SWORN AND SUBSCRIBED before me on this 16 day of OCTOBER, 2008

/s/ Elizabeth L. Walker
NOTARY PUBLIC FOR GEORGIA
MY COMMISSION EXPIRES: May 13, 2011

[Notary Seal: ELIZABETH L. WALKER, NOTARY PUBLIC, GEORGIA, EXPIRES MAY 13, 2011]

# IPINVESTMENTS GROUP

*The Forum, Suite 140*
*3930 E. Jones Bridge Road*
*Atlanta, Georgia 30092*

*Main: (404) 962-8740*
*Fax: (404) 962-8741*
*www.ipinvestmentsgroup.com*

October 22, 2008

Affinity Technology Group, Inc.
1310 Lady Street
Suite 601
Columbia, SC 29201

RE:  *Intellectual Property Transactions & Licensing Services*

Dear Joseph A. Boyle:

This letter (the "Agreement") will confirm the retention of IP Investments Group LLC ("IPI") by Affinity Technolgy Group, Inc. ("Client"), on an exclusive basis, to provide independent professional services in connection with the potential sale or licensing of Client's patent portfolio ("the Portfolio") as specified in Exhibit A.

## SCOPE OF ENGAGEMENT SERVICES:

In particular, IPI will: (1) assist Client in identifying Entity(ies) which might be interested in acquiring and/or licensing the Portfolio, (2) attempt to negotiate financial terms and conditions for the acquisition and/or licensing of the Portfolio with such Entity(ies) pursuant to terms established by Client, and (3) assist Client in connection with collection of compensation from such Entity(ies). For purposes of this engagement, Entity(ies) includes any company, party, or individual that IPI has: (1) held discussions with regarding the Portfolio, and/or (2) sent information to regarding the Portfolio. Client agrees to have IPI contact any company, party, or individual that contacts Client directly regarding the Portfolio during the term of this Agreement.

# IPINVESTMENTS GROUP

Mr. Joseph A. Boyle
October 22, 2008
Page 2

## CONFIDENTIALITY OF PROPRIETARY AND SENSITIVE INFORMATION:

IPI acknowledges that all materials disclosed to it by Client, and the work it performs for Client hereunder, are confidential and proprietary, and IPI will abide by all reasonable restrictions placed on it by Client on the dissemination of such materials and work. All employees of IPI have signed confidentiality agreements containing obligations to protect the confidentiality of such material. Any and all studies, reports, surveys of data, client information packages or other information prepared by IPI in connection with its work for Client in connection with this Agreement shall be the property of Client.

## FEE AND BILLING ARRANGEMENTS:

(A) **COMMISSIONS:**

In connection with the services provided under this Agreement, Client shall pay IPI a commission on total compensation received (whether in cash or forms other than cash) by Client from an Entity(ies) ("Success Fee Commission"). IPI's Success Fee Commission shall be based on the following scale for total compensation received for the Portfolio:

| SUCCESS FEE COMMISSION | TOTAL COMPENSATION RECEIVED |
|---|---|
| 20.0% | $0 – $1,000,000 |
| 25.0% of incremental increase in compensation above prior level | > $1,000,000 |

As an example, if the total compensation received by Client for a transaction was $1,500,000, then IPI's Success Fee Commission would be $325,000, as calculated below:

# IPINVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 3

| TOTAL COMPENSATION RECEIVED | RATE | SUCCESS FEE COMMISSION |
|---|---|---|
| $1,000,000 | 20% | $200,000 |
| $500,000 | 25% | $125,000 |
| $1,500,000 | | $325,000 |

If there is more than one transaction involving the Portfolio that results in compensation received by Client from more than one transaction, IPI's Success Fee Commission shall be based on the total compensation received by Client from an Entity(ies) from all such transactions. Accordingly, any compensation received from transaction(s) subsequent to the first transaction shall be cumulative in terms of calculating IPI's Success Fee Commission in the table above.

As an example, if the compensation received by Client for a first transaction involving patents ABC in the Portfolio was $1,000,000 and the compensation received by Client for a second transaction involving different patents DEF in the Portfolio was $1,000,000, then IPI's Success Fee Commission would be $450,000, as calculated below:

| TRANSACTION | TOTAL MONIES RECEIVED | RATE | SUCCESS FEE COMMISSION |
|---|---|---|---|
| 1 | $1,000,000 | 20% | $200,000 |
| 2 | $1,000,000 | 25% | $250,000 |
| | $2,000,000 | | $450,000 |

IPI's Success Fee Commission shall be due and payable to IPI within thirty (30) days upon Client's receipt of compensation from an Entity(ies).

# IPINVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 4

(B) **EXPENSES:**

Client agrees that in addition to any other compensation IPI receives under this Agreement, Client will pay and reimburse IPI for *out-of-pocket* expenses incurred at cost in connection with this engagement, including ordering patent file histories, FedEx charges, postage, conference call and long distance charges, reasonable travel, photocopies, etc. Client and IPI agree that these fees will be paid out of the proceeds of the sale.

## TERM AND TERMINATION:

(A) **TERM.** The term of this Agreement shall begin on the date of acceptance by Client, as specified in the signature block below, and shall continue until terminated as provided for below.

(B) **MUTUAL TERMINATION.** Both Client and IPI jointly agree to evaluate the go-forward status and success of the services provided under this Agreement at any time deemed necessary, and to the extent mutually agreed, the parties may modify the terms of this Agreement or agree to terminate this Agreement ("Mutual Termination"). In the event of a Mutual Termination, IPI will be entitled to payment of Success Fee Commissions on compensation that has been received by Client from any Entity(ies) prior to the date of Mutual Termination plus future Success Fee Commissions, if applicable, related to agreements executed with any Entity(ies) prior to such termination.

(C) **CLIENT UNILATERAL TERMINATION.** Client may terminate this Agreement upon thirty (30) days written notice to IPI via facsimile and regular mail at the address set forth above or such other address IPI may designate ("Client Unilateral Termination"). In the event of a Client Unilateral Termination, IPI will be entitled to payment of Success Fee Commissions on compensation that has been received by Client from any Entity(ies) prior to the date of Client Unilateral Termination plus future Success Fee Commissions, if applicable, related to agreements executed with any Entity(ies) prior to such termination. Also, for twelve (12) months after the date

# IPINVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 5

of Client Unilateral Termination, if any Entity(ies) becomes an acquirer and/or licensee of the Portfolio, IPI will be entitled to payment of Success Fee Commissions that would have been due if this Agreement had still been in effect.

(D) **IPI TERMINATION**. IPI may terminate this Agreement at any time upon thirty (30) days written notice to Client via facsimile and regular mail at the address set forth above ("IPI Termination"). In the event of an IPI Termination, IPI will be entitled to payment of Success Fee Commissions on compensation that has been received by Client from any Entity(ies) prior to the date of IPI Termination plus future Success Fee Commissions, if applicable, related to Agreements executed with any Entity(ies) prior to such termination.

(E) **BONA FIDE OFFER**. Notwithstanding the foregoing, if Client has received a bona fide offer from an Entity(ies) prior to the date of termination (any of the above-referenced termination types) and a transaction is completed with such Entity(ies) in the future after such termination, IPI will be entitled to payment of future Success Fee Commissions on compensation received by Client from such Entity(ies)

(F) **TERMINATION FOR CAUSE**. If Client believes IPI has failed to perform a material obligation under this Agreement that is so fundamental that the failure defeats the essential purposes of this Agreement, then Client may provide written notice to IPI describing the alleged breach in reasonable detail. If IPI does not, within thirty (30) days after receiving such written notice, either: (1) cure the breach, or (2) if the breach is not one that can reasonably be cured within thirty (30) days, develop a plan as mutually agreed to by both parties to cure the breach and diligently proceed according to the plan until the breach has been cured, then Client may terminate this Agreement ("Termination for Cause"). In the event of a Termination for Cause, IPI shall not be entitled to any future Success Fee Commissions related to Agreements executed with any Entity(ies) prior to the date of such Termination for Cause. IPI will only be entitled to payment of Success Fee Commissions on compensation that has been received by Client from any Entity(ies) prior to the date of such termination.

# IPINVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 6

## CONDITIONS AND LIMITATIONS:

(A) **NO GUARANTEES**. The parties acknowledge that IPI has not guaranteed that any Entity(ies) will enter into an agreement with Client or that any transaction will ultimately occur, and that IPI has not advised Client with respect to the validity of any of its patents, trademarks, or other intellectual property nor is IPI expected to opine on infringement by any Entity(ies) or other party(ies). The parties also acknowledge that Client has not made any guarantees with respect to the validity or enforceability of any of its patents.

(B) **LIMITATION OF LIABILITY**. Except for breach of the confidentiality and indemnification obligations contained in this Agreement, the parties agree that the total liability of each party, its officers, directors, principals, employees, agents, and subcontractors, for all claims of any kind arising out of this Agreement shall not exceed the fees paid by Client to IPI up to the date such claim arose. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES, REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES ACKNOWLEDGE THAT THESE EXCLUSIONS OF POTENTIAL DAMAGES WERE AN ESSENTIAL ELEMENT OF THIS AGREEMENT. Neither party shall be liable for any loss nor destruction of any valuable documents provided to the other party and each party shall be responsible for insuring its own such documents against loss or destruction. Client agrees to defend, indemnify and hold harmless IPI for any third-party claims which may arise from IPI's provisions of services under this Agreement.

(C) **GOVERNING LAW AND VENUE**. This Agreement and all matters arising out of or relating to this Agreement will be governed by the laws of the State of Georgia, without reference to its choice of law principles to the contrary. The parties submit to the exclusive jurisdiction and venue of the courts of the State of Georgia.

# IP INVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 7

### CONCLUSION:

If you wish to engage us to provide the services specified in this Agreement, please sign in the space below and return a copy of this letter to us via regular mail, fax, or email (pdf version) at your earliest convenience.

We look forward to providing our services in connection with this matter. If you have any questions, please do not hesitate to call me at (404) 962-8742.

Very truly yours,

IP Investments Group LLC

By: _____
Michael W. McLaughlin
Principal

AGREED TO AND ACCEPTED:

By: _____

Date: 10/22/08

# IP INVESTMENTS GROUP

Mr. Jospeh A. Boyle
October 22, 2008
Page 8

## Exhibit A

Patent Numbers:

- U.S. Patent No. 5,537,315
- U.S. Patent No. 5,870,721
- U.S. Patent No. 5,940,811
- U.S. Patent No. 6,105,007
- Any related U.S. or foreign applications and/or issued patents